11:59:25

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X
UNITED STATES OF AMERICA      )      21MJ21
                              )
vs.
                                   Buffalo, New York
THOMAS F. SIBICK,             )    March 12, 2021
              Defendant.           2:00 p.m.
- - - - - - - - - - - - - X

**INITIAL APPEARANCE**
**Transcribed from an Electronic Recording Device**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE

JAMES P. KENNEDY, JR., ESQ.
United States Attorney
BY: CHARLES MARK. KRULY, ESQ.
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202

MARIANNE MARIANO, ESQ.
U.S. Federal Public Defender
BY: ALEXANDER J. ANZALONE, ESQ.
300 Pearl Street, Suite 200
Buffalo, New York 14202
Appearing on behalf of Defendant

A. McCray, USPO

**COURT REPORTER: Karen J. Clark, Official Court Reporter**
**Karenclark1013@AOL.com**
**100 State Street**
**Rochester, New York 14614**

1          USA VS. T. SIBICK

2          P R O C E E D I N G S

3                *          *          *

4

5

12:02:17    6          THE CLERK:  This is United States versus

12:02:19    7  Thomas Sibick, docket No. 21MJ21.  This is the initial

12:02:24    8  appearance on a Rule 5 proceeding.  Assistant United

12:02:28    9  States Attorney Charles Kruly appearing on behalf of the

12:02:31   10  government.  Assistant Federal Public Defender Attorney

12:02:35   11  Angelo Anzalone appearing with defendant.  And United

12:02:42   12  States Probation Officer Andre McCray.

12:02:42   13          MAGISTRATE JUDGE SCHROEDER:  Good afternoon.

12:02:47   14          MR. ANZALONE:  Good afternoon.

12:02:49   15          MR. KRULY:  Good afternoon, your Honor.

12:02:50   16          MAGISTRATE JUDGE SCHROEDER:  Mr. Sibick, can

12:02:52   17  you hear me?

12:02:53   18          THE DEFENDANT:  Yes, your Honor.

12:02:54   19          MAGISTRATE JUDGE SCHROEDER:  I don't know if

12:02:57   20  you could just step back a little bit because I'm only

12:03:00   21  seeing your shoulders.

12:03:02   22          THE DEFENDANT:  Yes.  I was just standing up

12:03:04   23  for you, sir.

12:03:05   24          MAGISTRATE JUDGE SCHROEDER:  Thank you.

12:03:06   25  That's better.  We are conducting this proceeding this

USA VS. T. SIBICK

1

12:03:11  2  way, that is, by this video conferencing because it is

12:03:15  3  our belief and understanding that, based on scientific

12:03:19  4  and medical data, that if we were to bring everybody

12:03:23  5  together in one space, such as my courtroom, we increase

12:03:28  6  the risk of passing infection and becoming infected,

12:03:32  7  especially with the COVID-19 virus.  So, in order to

12:03:35  8  keep you as safe as possible, as well as the attorneys,

12:03:40  9  the probation officer, and my courtroom deputy, and

12:03:43  10  myself, by doing it by video conferencing where

12:04:15  11  everybody is in their own separate space, we minimize

12:04:19  12  that risk of infection.  So my question is:  Do you

12:04:22  13  consent to the proceeding being conducted this way?

12:04:24  14            THE DEFENDANT:  Yes, your Honor.

12:04:27  15            MAGISTRATE JUDGE SCHROEDER:  Thank you.  I

12:04:28  16  do have before me a waiver of Rule 5 and 5.1 hearings,

12:04:34  17  wherein you have indicated you are waiving your right to

12:04:39  18  an identity hearing and a probable cause hearing in this

12:04:42  19  district and you wish to reserve your rights with

12:04:45  20  respect to those hearings as well as any other rights

12:04:48  21  you have until such time as you appear in the United

12:04:55  22  States District Court in the District of Columbia, that

12:04:57  23  being the district in which the Complaint was issued.

12:05:00  24  Is that correct?

12:05:01  25            THE DEFENDANT:  Yes, your Honor.

```
 1                    USA VS. T. SIBICK
 2              MAGISTRATE JUDGE SCHROEDER:  Okay.  However,
 3  I do want to advise you of the provisions that are
 4  contained in Rule 20 of the Federal Rules of Criminal
 5  Procedure, since you were arrested in the Western
 6  District of New York and the charges arise out of an
 7  offense allegedly occurring in the District of Columbia.
 8  And what Rule 20 provides is as follows:  You could
 9  consent to a transfer of the case here to the Western
10  District of New York and enter a plea of guilty to the
11  charge and you would have to express that desire to do
12  that in writing.  However, if you were to submit such a
13  writing where you wish to plead guilty or nolo
14  contendere, and to waive a trial, the United States
15  Attorney in both districts, that is the District of
16  Columbia and the District of Western New York, would
17  have to agree to such procedure and transfer.  It is my
18  understanding that no agreement has been agreed to by
19  either United States Attorney from the District of
20  Columbia and/or the Western District of New York.  And
21  it is also my understanding that you have not made
22  written application to exercise your rights under Rule
23  20.  Is that correct?
24              MR. KRULY:  Your Honor, I can --
25              MR. ANZALONE:  Your Honor, I can address
```

1                          USA VS. T. SIBICK

12:06:38  2  that.  As far as I know, there is no indication that the

12:06:40  3  U.S. Attorney's Office would consent to that.  That is

12:06:45  4  correct, your Honor, we have not explored that.

12:06:48  5          MR. KRULY:  That is correct, your Honor.

12:06:50  6  The U.S. Attorney's Office for neither district have

12:06:52  7  consented.

12:06:53  8          MAGISTRATE JUDGE SCHROEDER:  All right.

12:06:54  9  That being the case, then the only matter then is for

12:06:59  10  your return to the District of Columbia, Mr. Sibick, and

12:07:03  11  that will be under the custody of the United States

12:07:05  12  Marshal Service wherein and whereby they will transport

12:07:10  13  you as soon as reasonably possible to the District of

12:07:13  14  Columbia where you will then be brought before the

12:07:16  15  United States District Court that issued this Criminal

12:07:21  16  Complaint and arrest warrant.  And, once again, your

12:07:23  17  rights to a preliminary hearing as well as a hearing

12:07:26  18  seeking bail and any other rights that you have under

12:07:29  19  the Constitution and the laws of the United States are

12:07:32  20  reserved to be raised, should you so desire, when you so

12:07:36  21  appear in the United States District Court in the

12:07:39  22  District of Columbia.  Do you understand that?

12:07:42  23          THE DEFENDANT:  Yes, your Honor.

12:07:44  24          MR. ANZALONE:  Your Honor, if I may be heard

12:07:46  25  briefly?

                        1          USA VS. T. SIBICK

12:07:46   2          MAGISTRATE JUDGE SCHROEDER:  Yes.

12:07:47   3          MR. ANZALONE:  Thank you.  It is our

12:07:50   4   intention, I know the Court just referred to Mr. Sibick

12:07:52   5   returning to the District of Columbia in the custody of

12:07:56   6   the U.S. Marshals, it is our intention to request the

12:07:59   7   Court release him in the interim so he can appear on his

12:08:04   8   own custody and on his own volition as he appeared in

12:08:08   9   the courthouse today.

12:08:11   10          MAGISTRATE JUDGE SCHROEDER:  My

12:08:11   11   understanding, however, is that there is an arrest

12:08:14   12   warrant that was issued by the United States District

12:08:17   13   Court in the District of Columbia.

12:08:20   14          MR. ANZALONE:  Well, that may be the case,

12:08:22   15   your Honor.

12:08:22   16          MAGISTRATE JUDGE SCHROEDER:  Am I correct,

12:08:23   17   Mr. Kruly?

12:08:24   18          MR. KRULY:  He was -- yes, your Honor, an

12:08:29   19   arrest warrant was issued for the defendant's arrest out

12:08:32   20   of the U.S. District Court out of the District of

12:08:36   21   Columbia.  The defendant was advised of that warrant

12:08:39   22   yesterday and surrendered himself to the courthouse

12:08:44   23   today at 9:15.  The government is moving, though, moving

12:09:10   24   for detention pending the defendant's return to the

12:09:13   25   District of Columbia.

```
 1              USA VS. T. SIBICK
 2         MAGISTRATE JUDGE SCHROEDER:  Well, it's my
 3    understanding under Rule 5 of the Federal Rules of
 4    Criminal Procedure, that when the district in which the
 5    alleged offense occurred properly issues a warrant for
 6    the arrest of the defendant, the district in which the
 7    defendant appears initially under Rule 5, that is the
 8    Western District of New York, in this case, must honor
 9    that arrest warrant, but reserving the rights of the
10    defendant upon his return to the district in which the
11    alleged offense was committed to seek and make
12    application for release.  So I'm going to remand the
13    defendant to the custody of the U.S. Marshal's service
14    for the purpose of transporting him to the District of
15    Columbia and appearing in that court on the Criminal
16    Complaint and affidavit, which presently are in place
17    against him.
18         MR. ANZALONE:  Your Honor, respectfully, if
19    I may be heard, please.
20         MAGISTRATE JUDGE SCHROEDER:  Before I -- let
21    me finish.
22         MR. ANZALONE:  Of course.
23         MAGISTRATE JUDGE SCHROEDER:  And, Mr.
24    Sibick, you have received a copy of the Criminal
25    Complaint and the affidavit upon which it is based,
```

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
|          | 1  | USA VS. T. SIBICK                                                 |
| 12:10:30 | 2  | correct?                                                         |
| 12:10:31 | 3  | THE DEFENDANT:  Yes, your Honor.                                 |
| 12:10:33 | 4  | MAGISTRATE JUDGE SCHROEDER:  And did you                         |
| 12:10:34 | 5  | receive a copy of the arrest warrant?                            |
| 12:10:35 | 6  | THE DEFENDANT:  I don't know if I have a                         |
| 12:10:40 | 7  | copy of the warrant, sir.                                        |
| 12:10:44 | 8  | MAGISTRATE JUDGE SCHROEDER:  Mr. Kruly, were                     |
| 12:10:45 | 9  | copies of the arrest warrant also made?                          |
| 12:10:48 | 10 | MR. KRULY:  Yes, your Honor.  And I provided                     |
| 12:10:49 | 11 | it to the Marshals and to Mr. Anzalone.  I can ensure            |
| 12:10:57 | 12 | that the Marshals provided Mr. Sibick with the arrest            |
| 12:11:01 | 13 | warrant.                                                         |
| 12:11:01 | 14 | MAGISTRATE JUDGE SCHROEDER:  Mr. Anzalone,                       |
| 12:11:02 | 15 | you want to say something?                                       |
| 12:11:03 | 16 | MR. ANZALONE:  I do, your Honor.  I have a                       |
| 12:11:05 | 17 | different reading of Rule 5.  I believe Mr. Sibick is            |
| 12:11:11 | 18 | entitled to, if not an interim detention hearing, then          |
| 12:11:27 | 19 | certainly a full detention hearing in this district,            |
| 12:11:30 | 20 | that is the district in which he initially appeared in.         |
| 12:11:33 | 21 | And if the Court's reading is that he is not entitled to        |
| 12:11:36 | 22 | an interim detention hearing, then he is going to assert        |
| 12:11:42 | 23 | his right to a full detention hearing.  And I ask that          |
| 12:11:44 | 24 | be held today.  I'm certainly prepared to proceed.  I           |
| 12:12:09 | 25 | believe that the government, I could be wrong, but based        |

1              USA VS. T. SIBICK

12:12:11  2  on some conversations I had with Mr. Kruly, I believe he

12:12:15  3  is prepared to proceed and intends on relying on the

12:12:18  4  videos he provided to me this morning.  That is my

12:12:22  5  anticipation that we would be doing today.  And that is

12:12:25  6  what I request we do today.  I don't believe Mr. Sibick

12:12:29  7  should spend time in custody when he self surrendered

12:12:34  8  this morning and was given the opportunity to walk into

12:13:00  9  court on his own volition.  And, as your Honor said, the

12:13:04  10  sole purpose of today's proceeding is to set him up with

12:13:08  11  a future court date in another district.  To me, that

12:13:11  12  doesn't make any sense your Honor.  So I'm asking that

12:13:13  13  we have the opportunity to argue on his release.

12:13:17  14          MAGISTRATE JUDGE SCHROEDER:  Well, in

12:13:19  15  response to that, I'm looking at the waiver of the Rule

12:13:24  16  5 and 5.1 hearings.  And I note in the last box,

12:13:30  17  paragraph six of the waiver:  "The defendant has waived

12:13:36  18  an identity hearing, production of the judgment, warrant

12:13:40  19  and warrant application, and any preliminary or

12:13:43  20  detention hearing to which I may be entitled in this

12:13:48  21  district," this district being the Western District of

12:13:50  22  New York.

12:13:51  23          MR. ANZALONE:  That's right, your Honor.

12:13:53  24  It's a very --

12:13:53  25          MAGISTRATE JUDGE SCHROEDER:  You waived the

```
                              USA VS. T. SIBICK
```

1

12:13:55  2  detention hearing.

12:13:56  3          MR. ANZALONE:  He is not waiving that

12:13:57  4  detention hearing, your Honor.  If that form indicates

12:13:59  5  that, then that is my error.  It's a very confusing form

12:14:04  6  with multiple boxes.  My understanding is he is

12:14:09  7  asserting his right to a detention hearing in this

12:14:12  8  district.

12:14:12  9          MAGISTRATE JUDGE SCHROEDER:  Do you have the

12:14:13  10  waiver form in front of you, Mr. Anzalone?

12:14:17  11          MR. ANZALONE:  I do, your Honor.

12:14:17  12          MAGISTRATE JUDGE SCHROEDER:  Look at the

12:14:18  13  last box in the paragraph to the right of that box under

12:14:23  14  paragraph six.  It appears to me he waived a preliminary

12:14:36  15  hearing in this district.  And then that paragraph goes

12:14:38  16  onto say, he, "The defendant requests that his

12:14:42  17  preliminary hearing and/or detention hearing be held in

12:14:46  18  the prosecuting district at a time set by that court."

12:14:50  19          MR. ANZALONE:  I understand that, your

12:14:51  20  Honor.  That is not what he is asking for right now in

12:14:53  21  open court.  He is asking for his detention hearing here

12:14:56  22  today.  I was under the impression that he could ask for

12:14:59  23  his interim release between now and when he appears in

12:15:04  24  the District of Columbia.  If that is not the case, that

12:15:07  25  waiver is not valid.  He is not waiving that.  I'm

```
            1              USA VS. T. SIBICK
12:15:11    2   asking for a detention hearing under Rule 5(d)(3), which
12:15:17    3   indicates, "The judge must detain or release the
12:15:20    4   defendant as provided by statute or these rules."
12:15:25    5          MR. KRULY:  And, Judge, the government's
12:15:26    6   understanding as well is that the defendant is entitled
12:15:29    7   to ask for his release or the government is entitled to
12:15:32    8   ask for detention in the arresting district.  As Mr.
12:15:35    9   Anzalone said, I am prepared to go forward today.
12:15:38   10          MR. ANZALONE:  So I apologize for the
12:15:40   11   confusion, that falls on me then.  I'll take
12:15:43   12   responsibility for that.  Mr. Sibick should not be
12:15:45   13   punished for that.  And I'm asking the Court allow him
12:15:49   14   to assert his right to a detention hearing under those
12:15:53   15   rules today.
12:15:54   16          MAGISTRATE JUDGE SCHROEDER:  What were you
12:15:55   17   citing, Rule 5 or 5.1?
12:15:57   18          MR. ANZALONE:  Yes, your Honor.  It's Rule
12:16:00   19   5, subparagraph (d) as in dog, which is the procedure in
12:16:05   20   a felony case.  And then under that, your Honor, it is
12:16:10   21   subparagraph (3), which speaks to detention or release
12:16:14   22   and says that, "The judge must allow" -- I'm sorry, "The
12:16:18   23   judge must detain or release the defendant as provided
12:16:21   24   by statute or these rules."
12:16:27   25          MAGISTRATE JUDGE SCHROEDER:  Right.  And
```

```
                              USA VS. T. SIBICK

12:16:28   2   when I go back up and look at Rule 5.1 under paragraph
12:16:38   3   three, "Procedures in a district other than where the
12:16:42   4   offense was allegedly committed," it states under
12:16:47   5   subparagraph (d), "The magistrate judge must transfer
12:16:51   6   the defendant to the district where the offense was
12:16:54   7   allegedly committed if (1) the government produces the
12:16:58   8   warrant, a certificate of the warrant, or a reliable
12:17:03   9   electronic form of either, and the judge finds that the
12:17:06  10   defendant is the same person named in the indictment,
12:17:10  11   information or warrant."  And since there is no identity
12:17:15  12   issue because the defendant waived his right to an
12:17:17  13   identity hearing and because the District of Columbia
12:17:20  14   issued a warrant, and because the defendant waived a
12:17:24  15   preliminary hearing in this district, as indicated in
12:17:27  16   the waiver form, I interpret then, the provisions of
12:17:34  17   paragraph three under Rule 5.3 to say that I've got to
12:17:38  18   honor the warrant of the District of Columbia and remand
12:17:41  19   the defendant to that district.
12:17:43  20            MR. ANZALONE:  Your Honor, I have no dispute
12:17:45  21   that that section requires the Court to transfer Mr.
12:17:50  22   Sibick to the originating district.  My dispute, and I
12:17:54  23   think it's borne out by the rules, there is nothing in
12:17:57  24   the rules that it has to be in custody, simply that the
12:18:01  25   case has to be transferred to the District of Columbia.
```

```
                              USA VS. T. SIBICK
```

1

2  And the rule expressly says, again, in Rule 5(d)(3),

3  "The Court must either release or detain the defendant

4  in accordance with these rules."  That refers back to

5  the detention, the statute governing detention or, at

6  least, the Bail Reform Act, which states the Court can

7  only detain Mr. Sibick under certain circumstances and

8  he is entitled to a detention hearing to resolve that

9  dispute.

10          MAGISTRATE JUDGE SCHROEDER:  Okay.  I guess

11  the problem is created by my fact of reading the waiver

12  form, which said he was waiving a detention hearing.

13          MR. ANZALONE:  I apologize.  That is my

14  oversight, and that is not his position nor is it his

15  position, so I'm asking that we have the detention

16  hearing today and now, if the government is available

17  and the Court a ready to proceed.

18          MR. KRULY:  The government is ready.

19          MAGISTRATE JUDGE SCHROEDER:  All right.

20  Let's go forward with a detention hearing.

21          MR. KRULY:  Yes, your Honor.  The government

22  is moving for detention of the defendant pending his

23  transfer to the District of Columbia pursuant to 18

24  U.S.C. Section 3141(f)(1)(A), as the defendant is

25  charged with a crime that is a violation of 18 U.S.C.

```
                          USA VS. T. SIBICK
```

1

2  Section 2111, that constitutes a crime of violence.  A

3  violation of 18 U.S.C. Section 2111, Judge, is a taking

4  by force, violence or intimidation of property from a

5  person of another within a special jurisdictional

6  territory within the United States.  And solely for the

7  record in support of the Government's belief that

8  Section 2111 is a crime of violence, the government

9  relies on the Tenth Circuit's decision in *United States*

10  *vs. Shirley*, 808 F. App'x 672 at 677; the Ninth Circuit

11  case decision in *United States vs. Fultz*, 923 F. 3d 1192

12  as 1197; and the Second Circuit, which has held the

13  identical language in the federal bank robbery statute

14  categorically qualifies as a crime of violence, that is

15  *U.S. vs. Hendricks*, at 921 F. 3d 320.  So, Judge, based

16  on that, the government is, as I said, moving for

17  detention pursuant to 3141(f)(1)(A), and we're asking

18  the Court to find that no condition or combination of

19  conditions can reasonably assure the safety of the

20  community or any person, and that is the defendant

21  should be detained pending his transfer to the District

22  of Columbia.  The government must, of course, make this

23  showing by clear and convincing evidence.  And the

24  government believes, after considering the 3142 (g)

25  factors, the facts support detention in this case.  The

                            USA VS. T. SIBICK

12:22:43   2   first section 3142(g) factor, Judge, is, I think, the

12:22:46   3   most important in this case.  And that is the nature and

12:22:48   4   circumstances of the offense.  This is -- it's difficult

12:22:53   5   to underscore, Judge, the seriousness of the crimes of

12:22:58   6   which the defendant is charged.  He is charged in taking

12:23:02   7   part in a riot at the lower west terrace of the U.S.

12:28:20   8   Capitol on January 6th, 2021.  And, as the Court is

12:28:24   9   aware, both from the Complaint, and the Court can take

12:28:27   10  judicial notice, that that riot was fomented by

12:28:31   11  individuals who had the intent of undermining the

12:28:53   12  constitutional process of certifying the Electoral

12:28:59   13  College vote.  There is no evidence that the defendant

12:29:04   14  organized the riot.  But what the evidence shows, Judge,

12:29:57   15  is that the defendant was presented with multiple

12:30:01   16  opportunities to turn around and avoid the violence at

12:30:03   17  the Capitol that day.  And every time he was presented

12:30:16   18  with an opportunity to turn around and avoid violence,

12:31:27   19  he went further and further and further.  And,

12:31:35   20  ultimately, Judge, what that culminated in is the

12:31:47   21  defendant taking part in the assault of the Metropolitan

12:31:52   22  Police Department Officer who had responded to the

12:31:53   23  Capitol in order to secure the building.  So where this

12:31:57   24  begins, Judge, is the defendant arriving at the Capitol

12:32:00   25  on the afternoon of January 6th, and the defendant has

```
               1              USA VS. T. SIBICK
12:32:03       2   told the FBI that when he arrived at the Capitol, it was
12:32:07       3   mostly, as I believe he put it, regular people at the
12:32:11       4   Capitol.  But that after several minutes, a group of
12:32:15       5   individuals wearing tactical gear and carrying weapons
12:32:29       6   arrived at the building.  That is the defendant's first
12:32:31       7   opportunity to turn around and avoid what was, I think,
12:32:34       8   at that point, writing on the wall.  But instead, Judge,
12:32:38       9   he stayed at the Capitol, and instead, Judge, of
12:32:42      10   leaving, he posted a video his Instagram, which I've
12:32:46      11   provided to Mr. Anzalone and provided to the Court.  And
12:32:49      12   I'm not going to play it because of some technical
12:32:52      13   issues, but the video, Judge, shows the defendant in a
12:32:56      14   mob of people in front of the Capitol.  The defendant
12:32:59      15   put a caption in the video that called this the "wildest
12:33:43      16   experience of my life!!!" The defendant then shouts into
12:33:50      17   the camera, "Just got tear gassed, but we're good baby.
12:34:17      18   We're good.  We're pushing forward now."
12:34:20      19              So, Judge, this is the defendant's second
12:34:23      20   opportunity to turn around and avoid the violence, but
12:34:28      21   by his own words, he says, "we're going to push
12:34:31      22   forward."  The defendant then pushed forward and he
12:34:33      23   worked his way towards a tunnel at the lower west
12:35:16      24   terrace of the U.S. Capitol that led into the building.
12:35:20      25   Excuse me.  That tunnel, Judge, led to a set of double
```

USA VS. T. SIBICK

12:35:27  2   glassed doors that led into the building.  The

12:36:00  3   defendant, as shown in the Complaint, entered the

12:36:04  4   building, or, excuse me, entered the tunnel and was part

12:36:07  5   of a group of people that were consistently and

12:36:10  6   regularly pushing forward in an effort to make way and

12:36:13  7   make entry into the building.  At the front of that

12:36:16  8   line, Judge, or, excuse me, at the front of that mob,

12:36:20  9   Judge, was a line of police officers who had arrived to

12:36:23  10  secure the building and to push the mob back, yet the

12:36:37  11  defendant kept pushing and he was part of the group that

12:36:40  12  tried to make entry into the Capitol.  At 3:11, a

12:36:45  13  surveillance video shows the defendant leaving the

12:36:49  14  tunnel.  And as the defendant leaves the tunnel, and as

12:36:53  15  shown in the complaint, the defendant encounters another

12:36:57  16  person who helps the defendant leave the tunnel.  The

12:37:29  17  person who helps the defendant asks the defendant where

12:37:31  18  he is from.  And a voice off camera admittedly responds,

12:37:36  19  "Buffalo.  Let's go.  Let me just get refreshed."  So

12:37:42  20  what we have now, Judge, is a defendant who had, I

12:37:46  21  think, his third opportunity to turn away from the

12:37:48  22  violence and turn away from the conduct at the Capitol.

12:37:51  23  But now he has called this "the wildest experience of

12:37:55  24  his life."  And he said, "It's time to push forward."

12:37:58  25  And now he has said, "it's time to get refreshed."  This

```
                          USA VS. T. SIBICK
```

1

12:38:02  2    is at 3:11.  Approximately seven minutes later, Judge,

12:38:05  3    the defendant encounters a Metropolitan police officer

12:38:10  4    who was there, as I said, to protect the Capitol.  And

12:38:14  5    that officer, Judge, was in the middle of being severely

12:38:17  6    and savagely beaten by a mob of people, some of whom

12:38:23  7    were trying to, as the officer recounted, to grab the

12:38:28  8    officer's gun from his holster to shoot him with his own

12:38:54  9    gun, people who were tasing the officer, people who were

12:38:57 10    trying to beat the officer.  And, again, Judge, the

12:39:01 11    defendant is presented with now, what I believe, his

12:39:05 12    fourth opportunity to turn away from the violence, but,

12:39:07 13    instead, what the defendant does is reach in, Judge, and

12:39:11 14    I'm going to share my screen and share this video from

12:39:14 15    the officer's body cam to allow the Court see the

12:39:18 16    defendant's conduct.  And what I'm sharing now is the

12:39:30 17    body cam footage of the officer who had arrived at the

12:39:34 18    Capitol to protect the building, who was at the police

12:39:37 19    line in the tunnel in the lower west terrace, who had

12:39:41 20    been pulled, at this point, pulled out of the police

12:39:43 21    line and is being assaulted by a vicious mob.  We have

12:39:47 22    here, Judge, the defendant on the left side of the

12:39:49 23    screen reaching in.  I'm going to play the video, which

12:39:54 24    is going to go in slow motion.  Now the defendant is

12:39:58 25    clutching the officer's badge in his left hand.  His

USA VS. T. SIBICK

right hand reaches in.  The defendant has now grabbed
the officer's badge, he now still has the badge.  The
officer's radio is pulled out by its antenna in the
defendant's hand.  So, Judge, what we have so far is the
defendant presented with an, I believe, by my count,
four opportunities to turn away from violence at the
Capitol.  And every time he is presented with the
opportunity to turn around, he goes further in.  He
first goes into the tunnel that is trying to make entry
into the building.  He then approaches an officer who is
being assaulted, and, by the defendant's claim,
attempts, the defendant's version, attempts to help the
officer remove himself from this mob who is assaulting
him.  But, Judge, given the defendant's multiple
statements that he needs to get refreshed, that it's
time to push forward, it's very difficult to believe
that the defendant's intent when approaching the officer
was to help him.

        So then, Judge, after, after January 6th,
after the riot has ended, the defendant returns to
Buffalo and he is eventually interviewed by the FBI on
several occasions.  The defendant, Judge, ultimately, as
I said, is cooperative with the FBI, but only to a
certain degree, and tells several lies, several half

USA VS. T. SIBICK

truths, several false statements to the agents.  And I
acknowledge that the defendant has no obligation to
cooperate with the FBI, but, of course, when he chooses
to cooperate, he has an obligation to provide truthful
information and not to provide false statements.  What
we have here, Judge, is a pattern of activity, another
pattern of opportunities to reconsider and to make good
choices, to not lie to the agents, yet he continues to
lie and lie and lie.  First, Judge, the defendant failed
to tell, during his first interview with the FBI, failed
to tell the agents that he had been part of the assault
of this officer, and that he failed to tell the officers
that he had taken the officer's radio and badge.  He
then told the FBI that he did take the radio and badge
and left it in a garbage can in D C.  He then told the
FBI that he, in fact, had brought the radio and badge
back to Buffalo, but that he had thrown them in a
dumpster on North Street in Buffalo.  And then, finally,
after being told that this claim would be verified by
surveillance footage, the defendant called the FBI and
told them that he had thrown the radio out and buried
the badge in his backyard.  So it wasn't, Judge, until
the third interview that the defendant acknowledged
stealing the officer's radio and badge.  But even then,

```
                              USA VS. T. SIBICK
```

1

2 Judge, the defendant lied about what he had done with

3 these items.  And it was only after the defendant was

4 told that he would be called on it, essentially, that he

5 owned up and admitted that he had buried the badge in

6 his backyard.

7          So, Judge, the weight or, excuse me, the

8 evidence supporting these charges is very strong.  As

9 the Court just saw, the crime was captured almost

10 entirely on the officer's body worn camera video as well

11 as surveillance footage at the Capitol.  The defendant

12 admitted on his Instagram that he was at the Capitol and

13 that he was going to "push forward" after he had been

14 tear gassed.  And what this leads to, Judge, is the last

15 3142(g) consideration, which is the nature and danger if

16 the defendant was released.  The defendant took part in

17 an attack on the U.S. Capitol, and then took part in a

18 further assault on a metropolitan police officer who had

19 arrived at the Capitol to protect the building.  The

20 defendant entered the tunnel at the lower west terrace

21 of the Capitol and tried to break through a police line

22 to make entry into the building.  This conduct, Judge,

23 shows a flagrant disregard for authority, a flagrant

24 disregard for law enforcement.  And if the defendant

25 would not or could not or did not follow the almost

USA VS. T. SIBICK

certain commands of the officers of the police line at
the Capitol to turn around, I don't think that gives the
Court any confidence that he is going to follow the
commands of probation and the requirements of this
Court.  And I acknowledge, as I said, that the defendant
turned himself in, but that was only, Judge, after a
month of lies to the FBI, of false statements, of half
truths, of all of the truth until we got to the point
where the defendant acknowledged that he, in fact,
brought the officer's badge back to Buffalo and buried
it in his backyard.  What this shows, Judge, is a
willingness to actively deceive law enforcement, which I
think is anthelical to any hope that the defendant is
going to follow the commands and the orders of this
Court and pretrial services.  So we would ask the Court
to find, Judge, by clear and convincing evidence, that
no condition or combination of conditions can reasonably
assure the safety of the community, and that the Court
remand the defendant to the custody of the U.S. Marshals
pending his transfer to the District of Columbia.

                    MAGISTRATE JUDGE SCHROEDER:  Mr. Anzalone.

                    MR. ANZALONE:  Thank you, your Honor.  As
the Court is aware, the purposes of bail or detention
are not punitive.  The Court has very limited reasons

USA VS. T. SIBICK

why the Court can hold an individual pretrial.  First,
to ensure their appearance in court.  I understand that
the government is not arguing that Mr. Sibick is a
flight risk.  I did not hear them make that argument nor
do I think they can given that he voluntarily turned
himself in after being notified that there was a warrant
for his arrest.  Secondly, as I believe the government
has argued, the Court can hold Mr. Sibick if it believes
that no conditions can be put in place which would
reasonably assure the safety of the community.  Your
Honor, the government has presented a timeline this
morning or this afternoon of the events at the Capitol
that day.  I would like to present my own timeline of
events that occurred since that day at the Capitol.
Judge, these are drawn from the Complaint.  The
government first confirmed that Mr. Sibick was present
at the Capitol on January 21st.  That is over a month
and a half ago, nearly two months ago.  The government
confirmed that.  The government first spoke, through the
FBI, with Mr. Sibick on January 27th.  Again, nearly a
month and a half ago.  On February 2nd, 40 days ago, Mr.
Sibick affirmatively reached out to the FBI after their
initial conversation.  Your Honor, three weeks ago, on
February 23rd, the government apparently had access and

USA VS. T. SIBICK

had already evaluated and analyzed the body cam footage
on which it relies today as referenced in the Complaint.
Several days after that, your Honor, the government had
multiple conversations, interactions with Mr. Sibick
with regard to this badge.  By my count, that is at
least six interactions that Mr. Sibick that the
government had prior to any involvement from the Court.
If, in fact, your Honor, the government believed that
Mr. Sibick was such a danger to the community, not just
that he had to be arrested, but also that no conditions
the Court could put in place, not even home detention,
not even home incarceration, if the government believed
he was such a danger to the community and such a
continuing danger, why, your Honor, why did they not
make swifter actions and take action immediately to try
and put him in custody?  They didn't, your Honor.  And
as the Court heard the government say just moments ago,
he was actually notified that there was an arrest
warrant and permitted him to turn himself in this
morning.

             Your Honor, I would argue, those are not the
actions of an agency that believes that an individual is
a danger.  That point is emphasized even more your Honor
when you consider what we're here for today.  We're here

```
 1                    USA VS. T. SIBICK
 2   for a Rule 5 proceeding, a transfer for Mr. Sibick out
 3   to another jurisdiction.  Particularly, your Honor, in
 4   the age of COVID when these appearances are occurring by
 5   video, I have racked my brain, and I cannot figure out
 6   for the life of me why a Rule 5 proceeding is even
 7   possible or is even necessary rather than just informing
 8   Mr. Sibick that he had to appear by video in the
 9   originating district, that is, in the District of
10   Columbia.  The only thing that we're here for today
11   appears to be a manufactured opportunity for the Court
12   to detain Mr. Sibick while he is transported to the
13   District of Columbia.  Appearances are happening
14   remotely across the country.  There is no reason he
15   couldn't appear remotely, appear for initial appearance
16   in D.C. from Buffalo remotely by video, particularly if
17   the government was trusting him to turn himself in this
18   morning.
19                    Your Honor, Mr. Sibick lives in Buffalo.  He
20   owns a house at 61 Park Club Lane.  He has resided there
21   for over two years.  He resides there with his
22   girlfriend.  He has strong family support in the
23   community.  His mother and his father are both
24   separately calling in to this proceeding.  They are
25   identified by the phone numbers, the 716 phone numbers
```

USA VS. T. SIBICK

on your Honor's screen.  I'm not going to read them on
the record.  They are both here.  And if the Court does
not trust Mr. Sibick to be released to home detention or
home incarceration to his own residence, he can return
to his parents' residence and be kept under,
essentially, lock and key to make sure he is not a
danger to the community.

Your Honor, the Court has tremendous
discretion in terms of the conditions that can be
imposed.  It can impose home incarceration.  It cannot
allow Mr. Sibick to even step outside.  It can impose
24-hour GPS monitoring.  It can make sure that as soon
as he moves outside, probation is notified and probation
can notify the Court and the Court could take him into
custody.  I don't believe that the government is arguing
that Mr. Sibick is a flight risk, but, regardless, I've
had Mr. Sibick's father take possession of his passport,
and he is prepared to surrender that to wherever he
needs to to ensure that Mr. Sibick is not going
anywhere.  But, again, if he were going somewhere, he
already would have gone.  He has been in communication
with the FBI for a month and a half and nothing has been
done in terms of flight.

Your Honor, Mr. Sibick was employed.  He was

                        USA VS. T. SIBICK

12:58:22   2   employed until the FBI came to his place of employment

12:58:26   3   where he was relieved of his duties, but he has two jobs

12:58:30   4   waiting for him if he is released, both at nursing

12:58:33   5   homes, which is what he has done in the past.  I

12:58:36   6   understand that Mr. Sibick was -- part of the allegation

12:58:39   7   was that he was part of something that was bigger than

12:58:42   8   him, but I think at the end of the day, your Honor has

12:58:45   9   to consider the particular circumstances of this

12:58:46  10   individual, and particularly given the government's --

12:58:52  11   the time the government took to get to this point.  I

12:58:54  12   think it is very difficult to take that argument that he

12:58:57  13   is a danger now with anything other than a large grain

12:59:03  14   of salt.

12:59:04  15           I'm asking the Court to conclude that there

12:59:07  16   are conditions that can be imposed which would allow Mr.

12:59:42  17   Sibick to remain out, not necessarily in the community,

12:59:44  18   but in his home under home detention, home

12:59:47  19   incarceration, and would allow, if, at the end of the

12:59:50  20   day he is found guilty or he pleads guilty, then there

12:59:54  21   is a time for punitive measures.  But right now, bail is

12:59:58  22   not meant to be punitive, your Honor.  It's only meant

13:00:11  23   to ensure safety of the community.  And it's my position

13:00:14  24   the Court can do that independently without holding him

13:00:16  25   in custody.  Thank you.

| | |
|---|---|
| 1 | USA VS. T. SIBICK |
| 13:00:18  2 | MAGISTRATE JUDGE SCHROEDER:  Mr. Kruly, is |
| 13:00:19  3 | there a date set by the United States District Court for |
| 13:00:22  4 | the District of Columbia for the appearance of the |
| 13:00:24  5 | defendant? |
| 13:00:26  6 | MR. KRULY:  Judge, my understanding is that |
| 13:00:29  7 | the practice in these cases around the country has been |
| 13:00:32  8 | for the Court in the arresting district to set a return |
| 13:00:36  9 | date in the District of Columbia.  I was asked to inform |
| 13:00:39 10 | the Court and to request from the Court a return date |
| 13:00:42 11 | next week in the District of Columbia.  So I believe we |
| 13:00:47 12 | can leave it to the Court's discretion as to a time and |
| 13:00:52 13 | date in the District of Columbia. |
| 13:00:53 14 | MAGISTRATE JUDGE SCHROEDER:  Any time in the |
| 13:00:54 15 | week of March? |
| 13:00:57 16 | MR. KRULY:  March 22nd, I believe.  Forgive |
| 13:01:04 17 | me, March 15th. |
| 13:01:09 18 | MAGISTRATE JUDGE SCHROEDER:  March 15th. |
| 13:01:10 19 | Mr. Anzalone, does Mr. Sibick have the financial |
| 13:01:13 20 | wherewithal to get himself to the District of Columbia? |
| 13:01:16 21 | MR. ANZALONE:  He absolutely does, your |
| 13:01:19 22 | Honor.  His father, who is on the line, could drive him. |
| 13:01:23 23 | He could drive him there by Monday, if need be. |
| 13:01:28 24 | MAGISTRATE JUDGE SCHROEDER:  All right. |
| 13:01:28 25 | What I'm going to require is the defendant is to appear |

USA VS. T. SIBICK

13:01:34   2   in response to the Criminal Complaint and the arrest

13:01:38   3   warrant presently pending in the District of Columbia on

13:01:46   4   March 16th, 2021 at 10 a.m.  And in making that

13:01:59   5   decision, I want to have the record clear as to why I

13:02:02   6   have allowed for the defendant to voluntarily transport

13:02:09   7   himself to the District of Columbia.  I understand the

13:02:12   8   government's position as to the crimes charged being

13:02:18   9   crimes of violence, I also, however, must take into

13:02:23   10  account the presumption of innocence to which the

13:02:26   11  defendant is entitled under the Constitution of the

13:02:29   12  United States.  And so I'm faced with two presumptions.

13:02:34   13  A statutory presumption created by Congress finding that

13:02:38   14  certain types of crimes charged raise a presumption of

13:02:43   15  dangerousness to the community or members of the

13:02:45   16  community.  But, as stated in the Act, that presumption

13:02:51   17  is a rebuttable one.  The presumption of innocence is

13:02:57   18  not only stated in the Bail Reform Act, the same statute

13:03:02   19  in which the presumptive and dangerousness is contained,

13:03:07   20  but it's also stated as a constitutional right under the

13:03:10   21  Constitution of the United States.  And it's that

13:03:13   22  constitutional right, which, in my opinion, is the one

13:03:17   23  entitled to the greater weight that we're talking about

13:03:21   24  presumptions.  But in doing that, I don't take lightly

13:03:26   25  the charges in this case and what transpired on January

                           USA VS. T. SIBICK

13:03:31   2   6th, 2021.  It would appear to me from what the

13:03:37   3   government has proffered as evidence of the activities

13:03:41   4   of the defendant on that date which resulted in the

13:03:45   5   Criminal Complaint, it has a strong case.  I'm also

13:03:51   6   taking into account, and, quite frankly, I have concerns

13:03:56   7   in that when I look at the Pretrial Services Report, the

13:04:03   8   defendant has been accused of prior acts involving what

13:04:08   9   I consider to be acts of violence.  And I'm referring

13:04:13   10  specifically to the charge that was issued in April of

13:04:45   11  2010.  Admittedly, it's a charge that is 10 years old,

13:04:49   12  but, nevertheless, it's part of the history of the

13:04:51   13  defendant which I must take into account in deciding

13:04:55   14  this motion.  Wherein the defendant was charged with

13:04:59   15  aggravated harassment in the second degree communicating

13:05:05   16  in a manner likely to cause alarm.  Admittedly, a class

13:05:10   17  A misdemeanor, but, nevertheless, aggravated harassment

13:05:13   18  in the second degree indicates to me some type of

13:05:16   19  threats that would create alarm.  When I look at the

13:05:24   20  date of October 24th, 2013, when the defendant

13:05:29   21  apparently was in Murray, Utah, he was charged in a drug

13:05:35   22  case involving possession of controlled substances for

13:05:41   23  which he was convicted, namely possession of marijuana.

13:05:46   24  When I look at the date of April the 19th, 2014, a

13:05:53   25  charge issued by the Lancaster Town Court, the defendant

USA VS. T. SIBICK

1

2  13:05:57  was charged with reckless endangerment first degree, a

3  13:06:02  class D felony, attempted reckless endangerment, second

4  13:06:06  degree, a class B misdemeanor which resulted in a plea

5  13:06:10  of guilty on July 10th, 2014 to attempted reckless

6  13:06:16  endangerment second degree.  Those charges, once again,

7  13:06:23  indicate activities involving violence when you talk

8  13:06:26  about endangerment in the first degree and attempted

9  13:06:30  recklessness as set forth.  And then in July of 2015,

10  13:06:40  once again in the state of Utah, Salt Lake City, the

11  13:06:44  defendant was charged with failure to stop at a command

12  13:06:48  of a police, a felony, and carrying a concealed loaded

13  13:06:53  firearm.  And if that is a factual situation, the

14  13:07:02  carrying of a loaded firearm indicates also the

15  13:07:07  potential for acts of violence.  So, I'm not discounting

16  13:07:13  lightly at all what the government is seeking in

17  13:07:17  presenting its argument as to why there should be

18  13:07:19  detention.  But I'm also taking into account what has

19  13:07:25  been proffered by defense counsel as to the recent

20  13:07:28  events where the defendant was certainly put on notice

21  13:07:32  that the government, by way of the FBI, was taking a

22  13:07:36  close look at him and his alleged activities on January

23  13:07:40  the 6th, 2021 at the Capitol in Washington, D.C.  So,

24  13:07:48  having been made aware that he is now the subject of an

25  13:07:51  investigation and having had more than one contact with

```
                              USA VS. T. SIBICK
```

1

13:07:56  2  FBI agents following up on their investigation, the

13:08:00  3  defendant, nevertheless, remained in the Western

13:08:05  4  District of New York up to the point of when, having

13:08:07  5  been advised that there was now a Criminal Complaint

13:08:10  6  against him with an arrest warrant, he voluntarily

13:08:15  7  surrendered to the appropriate law enforcement

13:08:18  8  personnel.  It's that voluntary surrender coupled with

13:08:21  9  the period of time from when the FBI first contacted the

13:08:26  10  defendant until today, March the 12th, 2021, that causes

13:08:32  11  me to conclude that, one, the defendant hasn't been

13:08:35  12  charged with anything in the Western District of New

13:08:38  13  York to indicate danger to the community or members of

13:08:42  14  the community; and two, the defendant has not fled the

13:08:46  15  jurisdiction.  So considering all of the facts and

13:08:50  16  circumstances in their totality, and considering the

13:08:54  17  fact that the defendant will be required by my order to

13:08:58  18  appear in the United States District Court for the

13:09:02  19  District of Columbia on March 16th, 2021, which is only

13:09:07  20  four days from today, I find that I can impose terms and

13:09:15  21  conditions that would reasonably protect the community

13:09:18  22  and members of it in the interim process.

13:09:23  23         And those terms and conditions are as

13:09:27  24  follows.  The defendant is hereby placed on home

13:09:31  25  incarceration, which means he is not to leave the

                              USA VS. T. SIBICK

13:09:36   2   residence at which he will be residing.  I'm also going

13:09:40   3   to require the defendant to reside with his parents as

13:09:43   4   defense counsel has indicated could happen.  And I'm

13:09:51   5   going to rely on the defendant's father to make sure he

13:09:56   6   remains in the residence and that he does not leave.

13:10:00   7   And because I feel that that would be sufficient, I'm

13:10:04   8   not going to require the probation office to go through

13:10:06   9   the logistics of setting up electronic monitoring

13:10:12   10  considering the short period of time that will occur

13:10:16   11  between now and when the defendant will have to depart

13:10:20   12  for Washington D C.  Undoubtedly, he'll have to depart,

13:10:25   13  if his father is driving him, either very, very early in

13:10:29   14  the middle of the night on the 16th or in the early

13:10:32   15  morning hours of the 16th of March or the day before,

13:10:37   16  that is, the 15th of March.  The trip from Buffalo to

13:10:42   17  Washington D.C., I'm assuming, is going to take

13:10:45   18  approximately close to eight hours.

13:10:54   19            MR. KRULY:  Your Honor, may I be briefly

13:10:57   20  heard?

13:10:58   21            MAGISTRATE JUDGE SCHROEDER:  Certainly.

13:10:59   22            MR. KRULY:  It's my understanding, Judge,

13:11:20   23  from conversations with the U.S. Attorney's Office in

13:11:23   24  the District of Columbia, that the government

13:11:41   25  respectfully intends to seek a review of the Court's

```
            1                    USA VS. T. SIBICK
13:11:44    2    release order pursuant to 18 U.S.C. Section 3145(a).
13:11:49    3    And to allow the U.S. Attorney's Office for the District
13:11:52    4    of Columbia to make that motion or at least to make a
13:11:55    5    motion for a stay, the government would respectfully
13:11:59    6    request a brief stay of the Court's release order.
13:12:04    7                    MAGISTRATE JUDGE SCHROEDER:  Well, we're not
13:12:08    8    talking about a lot of time.  As I say, today is the
13:12:11    9    12th of March, and it is 1:49 p.m. in the afternoon.  So
13:12:21   10    we're talking about, theoretically, Saturday and Sunday.
13:12:25   11    And it appeared to me that the defendant and his father
13:12:30   12    would have to start driving either on the 15th or
13:12:34   13    sometime, 1 or 2 o'clock in the morning to get to the
13:12:39   14    District of Columbia on the 16th at 10 a.m.  I've also
13:12:43   15    indicated the defendant is to be in home incarceration.
13:12:46   16    So it's not a question of him going anywhere.  And so if
13:12:51   17    he abides by that, where is the need for an appeal?
13:12:56   18    Where is the need for claiming there is any further
13:12:58   19    risk, especially as counsel for the defendant has
13:13:03   20    argued.  The government was well aware of the
13:13:07   21    whereabouts of the defendant sometime in February up
13:13:09   22    until today and took no action.  If he was such a
13:13:15   23    danger, and interviewed him a number of times and took
13:13:18   24    no action to have him detained.  How can I intelligently
13:13:25   25    say, well, he is a danger to the community,
```

1                      USA VS. T. SIBICK

13:13:27  2   notwithstanding the government thought there was no need

13:13:30  3   to have him immediately arrested and detained and that

13:13:35  4   there are no conditions that I can impose that would

13:13:39  5   assure reasonable safety of the community.  The

13:13:43  6   government, apparently, thought things were okay up

13:13:45  7   until today.  He has not been, up to today, been

13:13:50  8   arrested or detained since January 6th, 2021.  During

13:13:54  9   that time period, he was interviewed a number of times.

13:13:57  10  The government had the videos.  I just think it becomes

13:14:04  11  intellectually dishonest for me to rule otherwise

13:14:07  12  because you're asking me to now say, notwithstanding the

13:14:10  13  government's inaction, I should find the defendant was a

13:14:14  14  danger during that time period and will continue to be a

13:14:17  15  danger between now and March 16th, 2021.  And I don't

13:14:22  16  see any evidence that has sufficiently supported that

13:14:27  17  premise.

13:14:31  18          MR. KRULY:  Respectfully, your Honor,

13:14:32  19  obviously the government's response to the violence at

13:14:36  20  the U.S. Capitol has required tremendous, tremendous

13:14:41  21  resources, investing thousands of people.  So I

13:14:45  22  understand that this has taken time, but I don't think

13:14:50  23  that should necessarily be held against the government

13:14:52  24  considering the scale and the scope of the

13:14:55  25  investigation, thousands, tens of thousands of leads

                              USA VS. T. SIBICK

around the country, multiple FBI field offices, and a
large part of the Department of Justice as a whole.  I
recognize that the defendant was interviewed by the FBI
multiple occasions, but what I think is important to
note is that the defendant also lied to the FBI and on
almost each and every one of those occasions.  So I
think, Judge, in the defendant's mind, the risk to him
was much less than it is now now that he has been
charged with several federal felonies which he wasn't
charged with before.  He could very well lie to the
agents and assumed he had thrown them off the trail and
he would not be facing any consequences of his conduct.
But now, as I stated, he is charged with very, very
serious crimes.  And the fact that he lied to the agents
on multiple occasions cannot give the Court confidence
that he is going to abide by the condition that he, on
his honor, is going to stay at his parents' house
without leaving, without violating conditions, without
electronic monitoring, and without posting bond.  And
for those reasons, we respectfully ask for a brief stay
to allow the government to file a further stay in the
District of Columbia so the government can avail itself
of its statutory right to seek review of the Court's
release order.

1          USA VS. T. SIBICK

13:16:40   2          MAGISTRATE JUDGE SCHROEDER:  I'm perplexed

13:16:42   3   by what I consider to be a very contrary position of the

13:16:46   4   government in this context.  It's not a question of was

13:16:52   5   there an undue delay in making the charges against the

13:16:56   6   defendant.  I appreciate and I realize and I understand

13:17:02   7   the amount of work that went into investing the entire

13:17:06   8   January 6th, 2021 event, and that investigation

13:17:11   9   continues to be ongoing.  I understand that.  And I

13:17:14  10   understand that it would take time for the government

13:17:17  11   agencies to sift through all of the evidence that they

13:17:20  12   were acquiring, such as the videotapes as well as other

13:17:24  13   evidence.  So it's not a question of my claiming the

13:17:27  14   government delayed in taking action in that respect.

13:17:30  15   It's in the context of once they had the videotape, and,

13:17:34  16   apparently, they had the videotapes at least sometime in

13:17:38  17   late January or early February and had made an

13:17:41  18   identification of the defendant, so they knew who he was

13:17:45  19   and where he was, and then they went out and interviewed

13:17:48  20   him a number of times.  It's that in that space of time

13:17:55  21   that causes me to say, well, the government agencies

13:17:58  22   knew where he was, knew what they had in the way of

13:18:01  23   evidence, and yet they didn't place him under arrest or

13:18:05  24   charge him, and so they must not have felt he was such a

13:18:09  25   danger by not having to take that action.  It isn't

```
        1               USA VS. T. SIBICK
13:18:12  2  until March, I forget the exact date when the Criminal
13:18:19  3  Complaint is issued.
13:18:20  4            MR. KRULY:  March 10th.
13:18:21  5            MAGISTRATE JUDGE SCHROEDER:  March 10th, but
13:18:22  6  they knew who he was and they knew what the video was
13:18:26  7  well before March 10th.  In addition, and the Court
13:18:31  8  doesn't have to close its eyes to what is going on in
13:18:35  9  the other district, namely the District of Columbia, a
13:18:40 10  number of defendants who have been charged in similar
13:18:43 11  factual situations, and some with even more violent acts
13:18:48 12  that occurred on January 6th, 2021, have been released
13:18:54 13  by the Court in the District.  As I've indicated, we are
13:19:02 14  dealing with a presumption, a presumption of
13:19:05 15  dangerousness, which is a rebuttable one.  A presumption
13:19:09 16  of innocence.  And as defense counsel rightly points
13:19:13 17  out, bail is not to be used as a punitive measure.  Bail
13:19:17 18  is to ensure the appearance of someone in court when
13:19:23 19  required to so appear.  As I also indicated, this
13:19:26 20  defendant has not fled, has not taken any action to
13:19:31 21  indicate fleeing once he became aware the government was
13:20:05 22  interested in him and was following up on its
13:20:08 23  investigation.  And he voluntarily turned himself in
13:20:12 24  today.  And he is going to have to report within a
13:20:15 25  matter of three and a half days in the District of
```

```
                        USA VS. T. SIBICK
13:20:19  2  Columbia.  Why you want to tie everything up until the
13:20:24  3  U.S. Attorney's Office in District of Columbia can then
13:20:28  4  file a Notice of Appeal, and God knows how long that is
13:20:31  5  going to take for it to be heard, the defendant will be
13:20:35  6  down in the district.  If he is not, well, then the full
13:20:40  7  force of the federal government can be utilized to go
13:20:43  8  find him and arrest him and take him there in custody.
13:20:51  9              MR. ANZALONE:  Your Honor --
13:20:52  10             MR. KRULY:  Judge --
13:20:53  11             MR. ANZALONE:  I'm sorry.
13:20:54  12             MR. KRULY:  I believe -- you can go ahead,
13:20:56  13  Alex.
13:20:57  14             MR. ANZALONE:  Just briefly, your Honor.
13:20:58  15  The other issue is, I won't speculate as to why we are
13:21:02  16  here on a Friday afternoon, but the reality is that
13:21:08  17  we're here on a Friday afternoon.  If the Court grants
13:21:47  18  even a brief stay, it becomes a functional detention
13:21:50  19  order for the weekend.  And as the Court has told Mr.
13:21:54  20  Sibick to appear early next week on a Tuesday morning,
13:21:57  21  then the Court's release order is completely void.  A
13:22:00  22  brief stay function is a detention order until his next
13:22:05  23  court date.  That is all I'll say.
13:22:09  24             MAGISTRATE JUDGE SCHROEDER:  That is my
13:22:10  25  point.  That coupled with the fact he voluntarily
```

                          USA VS. T. SIBICK

13:22:13   2   surrendered himself.

13:22:16   3              MR. KRULY:  Yes, Judge.  And go ahead, your

13:22:18   4   Honor, I apologize.

13:22:19   5              MAGISTRATE JUDGE SCHROEDER:  I'm going to

13:22:20   6   deny the application.  I'm going to direct the

13:22:24   7   defendant, as I have, to appear in the District of

13:22:29   8   Columbia, United States District Court on March 16th,

13:22:33   9   2021 at 10 a.m.  And that in the interim, he is confined

13:22:37  10   to home incarceration, which is a confinement in the

13:22:43  11   custody of his father and mother.  And he is not to

13:22:48  12   leave the residence until it is time to depart to

13:22:52  13   Washington, D.C. for an appearance in the United States

13:22:56  14   District Court there to answer these charges.

13:23:02  15              MR. ANZALONE:  Thank you, your Honor.  I'm

13:23:03  16   going to ask the Court direct the Marshals to release

13:23:57  17   him immediately.  I happen to be downtown, so I will

13:24:00  18   coordinate the return of Mr. Sibick's body to his

13:24:03  19   parents.  That seemed a little dark.  I didn't mean it

13:24:06  20   like that.  To ensure that his parents take custody of

13:24:10  21   him immediately.  But I'm asking the Court to direct the

13:24:13  22   release of him immediately.

13:24:15  23              MAGISTRATE JUDGE SCHROEDER:  Now, I

13:24:16  24   indicated that his parents were on the phone.  Is the

13:24:19  25   father still listening?

|  |  |  |
|---|---|---|
|  | 1 | USA VS. T. SIBICK |
| 13:24:23 | 2 | MR. ANZALONE:  Your Honor -- |
| 13:24:25 | 3 | DEFENDANT'S FATHER:  Sir, I am here.  I am |
| 13:24:27 | 4 | here.  This is Dr. Sibick. |
| 13:24:30 | 5 | MAGISTRATE JUDGE SCHROEDER:  Would you |
| 13:24:32 | 6 | kindly -- |
| 13:24:34 | 7 | DEFENDANT'S FATHER:  I'm sorry, hello. |
| 13:24:38 | 8 | MAGISTRATE JUDGE SCHROEDER:  Hello. |
| 13:24:39 | 9 | DEFENDANT'S FATHER:  Yep, I'm here. |
| 13:24:41 | 10 | MAGISTRATE JUDGE SCHROEDER:  Okay. |
| 13:24:46 | 11 | MR. ANZALONE:  Mr. Sibick, we're getting a |
| 13:24:48 | 12 | lot of feedback.  You need to step outside to somewhere |
| 13:24:52 | 13 | where it's quieter. |
| 13:25:00 | 14 | DEFENDANT'S FATHER:  Okay.  This is Dr. |
| 13:25:01 | 15 | Sibick, I'm on the line. |
| 13:25:02 | 16 | MAGISTRATE JUDGE SCHROEDER:  Okay.  Would |
| 13:25:03 | 17 | you formally identify yourself for the record, please. |
| 13:25:06 | 18 | DEFENDANT'S FATHER:  Yes.  This is Dr. |
| 13:25:08 | 19 | Eugene Michael Sibick. |
| 13:25:10 | 20 | MAGISTRATE JUDGE SCHROEDER:  And you are the |
| 13:25:11 | 21 | father of the defendant in this case? |
| 13:25:16 | 22 | DEFENDANT'S FATHER:  Yes, sir. |
| 13:25:17 | 23 | MAGISTRATE JUDGE SCHROEDER:  I'm looking for |
| 13:25:18 | 24 | his first name. |
| 13:25:19 | 25 | DEFENDANT'S FATHER:  Thomas. |

```
 1              USA VS. T. SIBICK
```

13:25:20   2         MAGISTRATE JUDGE SCHROEDER:  Thomas.

13:25:22   3         DEFENDANT'S FATHER:  That is correct.

13:25:24   4         MAGISTRATE JUDGE SCHROEDER:  And you are

13:25:26   5   prepared and committed to receiving your son upon

13:25:30   6   release today into your custody and to keep him in your

13:25:35   7   residence under home incarceration until it is time for

13:25:39   8   you to drive him to the District of Columbia to have him

13:25:46   9   appear in court on December -- I'm sorry -- March 16th,

13:25:51  10   2021 at 10 a.m.  Is that correct?

13:25:53  11         DEFENDANT'S FATHER:  That is correct.  And I

13:25:56  12   must say that the prosecution made some false statements

13:25:59  13   because I was there when Thomas was interviewed.

13:26:03  14         MR. ANZALONE:  Mr. Sibick, just answer the

13:26:05  15   Judge's questions.

13:26:06  16         MAGISTRATE JUDGE SCHROEDER:  We don't need

13:26:07  17   to get into that.

13:26:10  18         DEFENDANT'S FATHER:  Okay.  So, yes, I am

13:26:11  19   prepared to receive him and watch over him and make sure

13:26:14  20   that he is in D.C. on Tuesday, March 16th at 10 a.m.

13:26:21  21         MAGISTRATE JUDGE SCHROEDER:  In the United

13:26:24  22   States District Court for the District of Columbia,

13:26:26  23   which is on Pennsylvania Avenue, the courthouse is known

13:26:29  24   as the Judge E. Barrett Prettyman Courthouse.

13:26:33  25         DEFENDANT'S FATHER:  Yes, I'm familiar with

```
 1                    USA VS. T. SIBICK
```

13:26:35   2   D.C.  I went to school there and I was there with the

13:26:39   3   Navy in 2017 with the Bureau of Medicine and Surgery.

13:26:44   4              MAGISTRATE JUDGE SCHROEDER:  And you are

13:26:45   5   currently a practicing physician.

13:26:47   6              MR. ANZALONE:  Currently I'm retired and

13:26:49   7   teach in Niagara University in the biology unit.

13:26:55   8              MAGISTRATE JUDGE SCHROEDER:  So you're a

13:26:56   9   person of responsibility?

13:26:59  10              DEFENDANT'S FATHER:  Yes.

13:26:59  11              MAGISTRATE JUDGE SCHROEDER:  Okay.  That is

13:27:00  12   all I need to know.

13:27:03  13              DEFENDANT'S FATHER:  Okay.

13:27:03  14              MAGISTRATE JUDGE SCHROEDER:  Upon any

13:27:04  15   additional processing by either the U.S. Marshal Service

13:27:07  16   and/or U.S. Probation office, the defendant is to be

13:27:10  17   released to the custody of his father, Dr. Sibick, and

13:27:16  18   he is then to reside in the residence of his father

13:27:20  19   under home incarceration, which means, Mr. Sibick, no

13:27:26  20   leaving the residence at all.  You are basically --

13:27:29  21              THE DEFENDANT:  Yes, your Honor.

13:27:31  22              MAGISTRATE JUDGE SCHROEDER:  -- you are

13:27:32  23   basically confined to the house itself.

13:27:34  24              THE DEFENDANT:  Yes, your Honor.

13:27:36  25              MAGISTRATE JUDGE SCHROEDER:  Until such time

|  | 1 | USA VS. T. SIBICK |
|---|---|---|
| 13:27:37 | 2 | as you're going to be transported by your father by |
| 13:27:40 | 3 | automobile to the District of Columbia so as to appear |
| 13:27:46 | 4 | in the United States District Court for the District of |
| 13:27:49 | 5 | Columbia on March 16th, 2021 at 10 a.m.  Do you |
| 13:27:53 | 6 | understand that? |
| 13:27:53 | 7 | THE DEFENDANT:  Yes, I do. |
| 13:27:55 | 8 | DEFENDANT'S FATHER:  I do have one question. |
| 13:27:56 | 9 | MAGISTRATE JUDGE SCHROEDER:  Yes. |
| 13:27:57 | 10 | DEFENDANT'S FATHER:  I do have a question. |
| 13:27:58 | 11 | MAGISTRATE JUDGE SCHROEDER:  Yes. |
| 13:28:00 | 12 | DEFENDANT'S FATHER:  You mentioned as far as |
| 13:28:02 | 13 | driving.  Would it be permissible to fly? |
| 13:28:05 | 14 | MAGISTRATE JUDGE SCHROEDER:  It's |
| 13:28:06 | 15 | permissible to fly, yes, if you can get a ticket. |
| 13:28:09 | 16 | DEFENDANT'S FATHER:  Okay. |
| 13:28:11 | 17 | MR. KRULY:  Judge, I will confirm with the |
| 13:28:13 | 18 | U.S. Attorney's Office for the District of Columbia. |
| 13:28:16 | 19 | There is a possibility that this proceeding on Tuesday |
| 13:28:18 | 20 | may be by Zoom.  And if it is, I'll promptly notify Mr. |
| 13:28:23 | 21 | Anzalone so that the defendant does not have to |
| 13:28:27 | 22 | physically appear in the District of Columbia. |
| 13:28:31 | 23 | MR. ANZALONE:  Appreciate that.  I'll send |
| 13:28:33 | 24 | that message across if that is the case. |
| 13:28:35 | 25 | MAGISTRATE JUDGE SCHROEDER:  All right. |

```
                1           USA VS. T. SIBICK
13:28:36        2  I'll expect the government, the Western District of New
13:28:45        3  York to verify with the District of Columbia, as to
13:28:52        4  whether the March 16th at 10 a.m. appearance is going to
13:28:57        5  be conducted by Zoom.  If it's going to be conducted by
13:29:00        6  Zoom, then arrangements should be made for Mr. Sibick to
13:29:06        7  attend that Zoom conference in his residence here with
13:29:11        8  his attorney, Mr. Anzalone.  And arrangements can be
13:29:14        9  made for that Zoom conference.
13:29:17       10           MR. ANZALONE:  Judge, maybe we could ask Dr.
13:29:20       11  Sibick to mute himself because I'm having difficulty
13:29:23       12  hearing.
13:29:26       13           DEFENDANT'S FATHER:  Okay.
13:29:33       14           MR. ANZALONE:  I tried.
13:29:33       15           MAGISTRATE JUDGE SCHROEDER:  I guess we lost
13:29:35       16  you, Dr. Sibick.
13:29:39       17           MR. ANZALONE:  No, no.  I asked him to mute
13:29:41       18  himself.  I was having difficulty hearing your Honor
13:29:44       19  with feedback.
13:29:45       20           MAGISTRATE JUDGE SCHROEDER:  Okay.  Mr.
13:29:46       21  Kruly, you're going to check with the United States
13:29:49       22  Attorney's Office in the District of Columbia to
13:29:50       23  determine whether the conference or the appearance will
13:29:54       24  be by Zoom or will be in person?
13:29:56       25           MR. KRULY:  Yes, I'll do that this
```

```
          1              USA VS. T. SIBICK
13:29:58  2   afternoon.
13:29:59  3              MAGISTRATE JUDGE SCHROEDER:  All right.  And
13:30:00  4   you'll notify Mr. Anzalone so he can notify the
13:30:04  5   defendant's father as to what arrangements are going to
13:30:09  6   be made for March 16th, 2021.
13:30:13  7              MR. KRULY:  I will, your Honor.
13:30:14  8              MAGISTRATE JUDGE SCHROEDER:  All right.
13:30:16  9   Well, thank you everyone.  Stay safe.
13:30:19 10              MR. ANZALONE:  Okay.
13:30:21 11              MR. KRULY:  Okay.  Thank you, Judge.
13:30:22 12              THE DEFENDANT:  Thanks, your Honor.
         13                        *    *    *
         14              CERTIFICATE OF REPORTER
         15
         16      I certify that the foregoing is a correct transcript
         17   of the record to the best of my ability of proceedings
         18   transcribed from the audio in the above-entitled matter.
         19
         20   S/ Karen J. Clark,  RPR
         21   Official Court Reporter
         22
         23
         24
         25
```